(Decided March 8th, 1859.)

## The Baltimore Cemetery Company *vs.* The First Independent Church of Baltimore.

In an action of *debt* on a sealed instrument, brought by "The First Independent Church of Baltimore," as plaintiff, the *nar.* averred, that the promises and obligations of the agreement were made to and with the *plaintiff,* but, upon *oyer,* it appeared they were made to and with "*the trustees*" of the plaintiff. HELD:

That as there is no averment in the *nar.* that the contract was made with the plaintiff, in the name of its trustees, nor any explanatory averment, why it was not made with the plaintiff in its true name, the *variance* is *fatal,* and may be taken advantage of by *demurrer,* or on *motion in arrest.*

In an action of debt, a variance appearing on the record, in regard to the name of the *plaintiff,* may be taken advantage of by demurrer, or on motion in arrest, as well as a variance in relation to the name of a *defendant.*

APPEAL from the Court of Common Pleas.

This was an action of *debt,* brought by the appellee against the appellant, on the 7th of January 1856. The contract on which the suit was brought, the pleadings, and the reasons for the motion in arrest of judgment, are fully stated in the opinion of this court. At the trial an exception was taken, to the refusal of the court (MARSHALL, J.) to grant two instructions asked for by the defendant, but as the case was decided in this court, entirely upon the motion in arrest, these prayers need not be stated.

The verdict and judgment were in favor of the plaintiff,

and the court below having overruled the motion in arrest, the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J,

*Jos. P. Atkinson* and *Wm. S. Bryan* for the appellant:

1st. The instrument set out on oyer, shows, that the obligation, (if it ever became fixed,) was to pay to the plaintiff's trustees; consequently the action should have been brought in the name of the trustees. The variance in this particular, and other variances between the oyer and the description, are fatal to the plaintiff's recovery. *Chitty's Pl.*, 3, 4, 64, 305, 317, 434, *(Ed. of* 1844.) 1 *Greenlf. on Ev.*, secs. 66, 68, 69, *and note.* 11 *Eng. C. L. Rep.*, 251, *Berkeley vs. Hardy.* 42 *Eng. C. L. Rep.*, 817, *Cooch vs. Goodman.* 7 *Cranch.*, 208, *Sheehy vs. Mandeville. Pennington*, 84, *Inhabitants of Woolwich vs. Forrest.* 5 *Halsted*, 323, *Inhabitants of Upper Alloways vs. String.*

2nd. This objection is well taken by motion in arrest of judgment. When the deed is set out on oyer, it becomes part of the declaration. *Chitty's Pl.*, 434, *(Ed. of* 1844.) 3 *Cranch.*, 234, *Cooke vs. Graham.* 11 *Md. Rep.*, 322, *Tucker vs. The State.* 8 *Gill*, 465, *Dorsey vs. Whipps.* 2 *H. & G.*, 495, *Agnew vs. Bank of Gettysburg.*

The objection, therefore, appears on the record, and that too by the plaintiff's own pleading. There is no question that it would have been fatal on demurrer. It must, therefore, be equally fatal in arrest of judgment, unless the defect is cured by verdict: for the judgment of the court is only the conclusion from the facts ascertained on the record. A demurrer admits the facts, and a verdict finds them by the oaths of the jury. Now it is well settled, that a verdict supplies those facts only, which, by fair and reasonable intendment, may be inferred from those stated. This is the doctrine of *Rushton vs. Aspinall*, in 1 *Smith's Lead. Cases*, 334, the leading case. But the objection here is, not that there is an omission which may be supplied, but that there are facts

pleaded by the plaintiff, repugnant to its right of recovery. A verdict cannot supply the want of a right of action. *Gould's Pl.*, ch. 10, secs. 3, 13, 14, 20, 21, 22. 3 *H. & J.*, 216, *Noland vs. Ringgold.* 24 *Eng. C. L. Rep.*, 96, *Price vs. Easton.* 7 *H. & J.*, 372, *Neale vs. Clautice.* *Ibid.*, 113, *Howard vs. Ramsay.*

*John D. Lipscomb* and *Geo. Wm. Brown*, for the appellee:

1st. The court properly overruled the motion in arrest. The first and principal point in the motion is, the variance alleged between the contract as stated in the declaration and as stated in oyer. But there is in fact no variance. The name of the plaintiff is correctly set forth in the contract, and it is clear, that the contract is with the plaintiff; the promise is to the plaintiff, to pay to its trustees merely as the acting officers of the church. Even in a declaration it is sufficient, if the corporate name be stated correctly in the beginning, the full name need not be repeated at every recurrence, (*Angel & Ames on Corp.*, 510,) and in a contract, if the corporate name be not stated at every recurrence, the contract is a good one; (2 *Kent*, 293,) and it will be considered as a contract with the corporation. It is not even necessary, that the corporate name should be stated correctly, provided it sufficiently appears from the evidence, that the corporation is really intended. The contract is substantially with the First Independent Church, the plaintiff. There is no principle of law that requires the exact language of a contract to be used in the declaration; it is sufficient if the subject matter of the contract be substantially and correctly given, in other words, that the contract be stated according to its legal effect. 1 *Chitty's Pl.*, 305. Cases are numerous where mistakes having been made in the names of corporations, in contracts with them, the corporations suing in their true corporate names have been allowed to recover. 5 *H. & J.*, 122, *Hagerstown Turnpike Road Co., vs. Creeger.* 13 *Johns.*, 38, *N. Y. African Society, &c., vs. Varick.* 6 *Sergt. & Rawle*, 12, *President, Managers & Co., vs. Myers.* 10 *New Hamp.*, 123, *Newport Mechanics Manf. Co., vs. Starbird.* 10 *Mass.*, 360, *Medway Cotton*

*Manf., vs. Adams.* 3 *Pick.,* 232, *First Parish in Sutton vs. Cole.* 21 *Pick.,* 486, *Commercial Bank vs. French.* 10 *Ohio,* 111, *Milford & Chillicothe Turnpike Co., vs. Brush.*

2nd. But even supposing there was a variance, as alleged, advantage cannot be taken of it by motion in arrest. It is one of those defects which are cured by verdict. The jury could not have given a verdict for the plaintiff, without first finding that the contract sued upon was a contract with the plaintiff; indeed this is conceded by the defendant, and having so found, the defect, if one existed, is cured, and it is now too late to take advantage of it. *Evan's Pr.,* 330. *Stephen's Pl.,* 147, 245, 233. 11 *G. & J.,* 472, *Ragan vs. Gaither.* 8 *Gill,* 64, *Merrick vs. Bank of Metropolis. Angel & Ames on Corp.,* 582. 4 *H. & J.,* 338, *Marine Bank vs. Biays.* But the proper remedy in this case, if there be a variance, was a plea in abatement or a demurrer, and it would be unjust to allow the defendant to withhold the objection until after verdict, when it is too late for the plaintiff to correct the error. *Evan's Pr.,* 202, 158, 330. *Gould's Pl.,* 270, 271. 1 *Chitty's Pl.,* 434.

*Note.* The argument on other points on both sides is omitted.

ECCLESTON, J., delivered the opinion of this court.

This is an action of debt instituted by "The First Independent Church of Baltimore," against "The Baltimore Cemetery Company," upon a sealed instrument of writing.

The declaration states: "And whereupon the said church, plaintiff in this action, by Brown & Brune, its attorneys, complains, that whereas, by a certain agreement, made on the twelfth day of August, in the year eighteen hundred and fifty, to wit, at the city aforesaid, which said agreement, sealed with the seal of the said defendant, the said plaintiff now brings into court here, the date whereof is the day and year aforesaid, it is witnessed, that whereas, a petition to the city commissioners was in circulation to pave Bel-Air avenue from Point Lane to North Avenue; and whereas, to secure a good highway to the Baltimore Cemetery, the defendant had agreed

to contribute a certain sum, and divide it, at its discretion, among petitioners; and in consideration of the secretary of the plaintiff, in behalf of the plaintiff, signing said petition, the said defendant bound itself to pay to said plaintiff, one-half of the whole cost of paving said avenue, which might be chargeable to the burial ground of said plaintiff, situate on said road, whenever the said plaintiff should be called upon by the proper party."

And the declaration then avers, that subsequently, to wit, on the first day of September, eighteen hundred and fifty, at the city aforesaid, in pursuance of said agreement, the secretary of the plaintiff, did, in behalf of the plaintiff, sign the said petition; that the whole cost of paving said avenue, chargeable to the burial ground of the plaintiff, situate on said road, amounted to the sum of $571.69, which said sum, on the 1st day of May 1854, at the city aforesaid, became due and payable by the plaintiff to the Mayor and City Council of Baltimore, and the plaintiff was called on for payment thereof, by the proper party, to wit, by the collector of said Mayor and City Council; and thereupon one-half of said sum, to wit, two hundred and eighty-five dollars and eighty-four cents, became, and was then and there, due and payable to the said plaintiff, and ought then and there to have been fully paid by the said defendant to the said plaintiff, according to the tenor and effect of the said agreement.

The defendant having craved oyer of the agreement under seal, it appears in these words, to wit:

"Whereas, a petition to the city commissioners is in circulation to pave Bel-Air avenue from Point lane to North avenue; and whereas, to secure a good highway to the Baltimore Cemetery, the Baltimore Cemetery Company have agreed to contribute a certain sum, and divide it, at their discretion, among the petitioners.

"And in consideration of the secretary of the First Independent Church of Baltimore, in behalf of the trustees, signing said petition, the said Company hereby bind themselves to pay to said trustees, one-half of the whole cost of paving said avenue, which may be chargeable to the burial ground of said

16      v. 13.

trustees, situate on said road, whenever the said trustees shall' be called on for payment by the proper party. In testimony whereof, the said Company have caused their seal to be affixed hereto, and their president to sign the same, this 12th day of August 1850.

(Seal.)    Ben. A. Lavender, President."

The pleas are—

1st. That the agreement had not been broken by the defendant in the manner and form complained of.

2nd. That the secretary of the plaintiff did not, in behalf of the plaintiff, sign the petition mentioned in the declaration.

3rd. That the whole cost of paving said avenue, chargeable to the burial ground of the plaintiff, situate on said road, did not amount to $571.69.

4th. That the portion of the avenue mentioned in the declaration could not be lawfully paved, unless an application for that purpose was made to the city commissioner, signed by the proprietors of a majority of the feet of ground binding and fronting on said portion of the avenue; that the petition mentioned in the declaration *was not signed by such majority,* and was abandoned, and not prosecuted to the city commissioner; and that afterwards another application was presented to the city commissioner, signed by the proper majority of proprietors, but not signed by the secretary of the plaintiff, or by any other person for it; and that thereupon such proceedings were had that the said portion of said avenue was paved by the authority of the Mayor and City Council of Baltimore.

The plaintiff joined issue upon the first, second and third pleas. To the fourth the replication is, "that said petition never was abandoned."

At the trial of the cause, the charter of the plaintiff was read in evidence, and is to be considered in this court as if inserted in the record. And the charter shows the true corporate name to be, "The First Independent Church of Baltimore."

The jury gave a verdict in favor of the plaintiff for $300.12, and the defendant filed a motion in arrest of judgment, assigning the following reasons:

*First.* Because the contract set out in the declaration varies

from that in the oyer, in this:  That it is alleged in the decla-tion, that the Baltimore Cemetery Company, in consideration of the secretary of the plaintiff, in behalf of the plaintiff, sign-ing the petition mentioned in the declaration, the said Ceme-tery Company bound itself to pay to plaintiff, one-half of whole cost of paving Bel-Air Avenue, which might be charge-able to the burial ground of plaintiff, situate on said road, whenever the said plaintiff should be called upon by the prop-er party; whereas, by the contract set out in oyer, it appears that the secretary of the plaintiff was to sign the said petition in behalf of the trustees; and that the payment by the com-pany was to be made to the trustees, and the amount to be paid was one-half the cost of paving, chargeable to the burial ground of said trustees; and the time of payment was when said trustees should be called upon by the proper party.

*Second.* Because there is no averment in the declaration showing that the paving of Bel-Air Avenue was done in con-sequence of the signing of the said petition by the secretary of the plaintiff, or that the said petition was, in any way, effectual in bringing about said paving.

The third reason is abandoned.

*Fourth.* Because the action should have been covenant in-stead of debt.

The first of the reasons, thus assigned, presents the question on which the case will be decided.

In an action of debt upon a bond, in *Williams vs. Bryant,* *5 Mees. & Welsby,* 447, the declaration complained against William Francis Bryant, who had been sued by the name of William Bryant.  The defendant pleaded *non est factum.* It appeared in evidence that the defendant did, in fact, exe-cute a bond agreeing with that described in the declaration, by the name of William Bryant, and that at the time of the execution he was known by that name.  It was objected that the issue was not maintained, and that there ought to be a non-suit.  The judge directed a verdict for the plaintiff, re-serving to the defendant's counsel liberty to move to enter a non-suit.  After argument, upon a rule to show cause, the rule was discharged.  In delivering the opinion of the court,

Parke, B., notices the case of *Gould vs. Barnes*, 3 *Taunt.*, 504, and others therein referred to.   And from these, he says: "It appears to be a settled point, that if a declaration against a defendant by one christian name, as, for instance, Joseph, state that he executed a bond by the name of Thomas, *and there be no averment to explain the difference, such as that he was known by the latter name at the time of execution,* such a declaration would be bad on demurrer, or in arrest of judgment, even after issue joined on a plea of *non est factum.*" Subsequently, in the same opinion, the learned Baron holds it to be certain, that a person might *then* sue or be sued, not merely by his true name of baptism, but by any first name which he has acquired by usage or reputation.   And that if so, it must be a sufficient designation of him, if he enters into a bond by that name.   It is then said: "It by no means follows, therefore, that the decisions in the case of *Gould vs. Barnes,* and others before referred to, in which the question arose on the record would have been the same, if there had been an averment on the face of the declaration, that the party was known by the proper name in which the bond was made at the time of making it.   We find no authorities for saying that the declaration would have been bad with such an averment, even if there had been a total variance of the first names; still less where a man having two proper names, or names of baptism, has bound himself by the name of one.   And on a plea of *non est factum, where the difference of names does not appear on the record,* and there is evidence of the party having been known, at the time of the execution, by the name on the instrument, there is no case cited on the argument, and none that we aware of, which decides that the instrument is void." Under the pleadings and proof in that case, the court held, that the bond, which was executed in the name by which the party was commonly called or known, was not void, and consequently the plaintiff was entitled to recover.

And the opinion concludes thus: "We wish to add, that it appears to us, that if the objection were valid, it was not available under this plea of *non est factum,* since the new rules."

The rule of *Hilary Term,* 4 *Will.,* 4*th,* on this subject,

declares that: "In debt on specialty, the plea of *non est fac-tum* shall operate *as a denial of the deed in point of fact only*, and all other defences shall be specially pleaded, including matters which make the deed absolutely void, as well as those which make it voidable."

The refusal to enter a non-suit, in *Williams vs. Bryant*, was based upon the particular circumstances of that case. But, nevertheless, the opinion of the court is a clear and explicit recognition of the point or principle stated as settled by *Gould vs. Barnes*, and other cases therein referred to. It is conceded throughout, that where the *variance appears on the record*, it is necessary to explain the difference by a proper averment in the *nar.* Such we therefore understand to have been the law in England, in a suit upon a sealed instrument set out upon oyer, prior to the adoption of the new rules. And if so, the same law is applicable to the case before us.

As to the effect of setting out a deed on oyer, see 1 *Greenlf. on Ev.*, sec. 69, *and notes*.

Seeing that a variance appearing on the record, in regard to the name of the defendant, in the absence of a proper averment in the *nar.*, may be taken advantage of by demurrer, or upon a motion in arrest of judgment, it is difficult to perceive why the same law should not apply to a variance in relation to the name of a plaintiff.

Instead of this contract having been made with the plaintiff, in its true corporate name, the promises and obligations of the same all appear to be to the *"trustees."* And yet there is no averment in the *nar.*, that the contract was made with the plaintiff in the name of its trustees; nor is there any averment explanatory why the contract was not made with the plaintiff in its true name.

But the *nar.* simply states all the promises and obligations of the agreement to have been made with the "plaintiff;" the *nar.* showing the plaintiff to be, "The First Independent Church of Baltimore."

It is true, as stated by the plaintiff's counsel, that there are cases where mistakes have been made in the names of corporations, in contracts with them, upon which the corporations,

suing in their true names, have been allowed to recover. We have examined the cases which have been referred to on this point, and in not one of them has the doctrine announced by Baron Parke, above stated and relied upon, been overruled or denied to be sound law, where the suit was upon a sealed instrument, and upon oyer a variance has appeared on the record, in the name of the plaintiff or the defendant.

It is contended by the plaintiff's counsel, that supposing there is a variance, as the defendant has alleged, still, advantage cannot be taken of it by motion in arrest of judgment, because it is such a defect as is cured by verdict.

This cannot be so, if we are correct in supposing—as we think we are—that the true English doctrine, before the introduction of the new rules, in such a case as the present, was that which, in *Williams vs. Bryant*, Baron Parke spoke of as appearing, from the cases he referred to, "to be a settled point."

Entertaining these views, we need not notice any questions presented by the record, other than the first reason assigned for arresting the judgment. And upon this, the decision below, overruling the motion in arrest, will be reversed, and the judgment upon the verdict will also be reversed and arrested.

*Reversed and judgment arrested.*

(Decided March 8th, 1859.)